# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

KRISTEN N. MINTON,

        Plaintiff,

v.                                    Case No. 6:24-cv-478-JRK

LELAND C. DUDEK,
Acting Commissioner of Social
Security, [1]

        Defendant.

_____

## OPINION AND ORDER[2]

### I. Status

Kristen N. Minton ("Plaintiff"), who originally was found to be disabled by the Social Security Administration ("SSA"), is appealing the SSA's final decision finding that as of October 14, 2019, her disability ceased but on February 7, 2022, she became disabled again. Plaintiff was initially found to be disabled as of January 1, 2014 via decision dated March 31, 2016 mainly

---

[1]      Leland C. Dudek became the Acting Commissioner of Social Security in February 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Mr. Dudek is substituted as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2]      The parties consented to the exercise of jurisdiction by a United States Magistrate Judge. See Order Regarding Consent to Magistrate Judge Jurisdiction in Social Security Appeals (Doc. No. 117), Case No. 3:21-mc-1-TJC (outlining procedures for consent and Defendant's generalized consent to Magistrate Judge jurisdiction in social security appeals cases); consent by Plaintiff indicated in docket language for Complaint (Doc. No. 1).

because of "irritable bowel syndrome, generalized anxiety disorder, and major depressive disorder." Transcript of Administrative Proceedings (Doc. No. 11; "Tr." or "administrative transcript"), filed May 7, 2024, at 231, 235, 229-36 (emphasis omitted).[3] The original finding of disability was based on an application for DIB protectively filed on March 19, 2015.[4] Tr. at 236; see Tr. at 619-22.

The SSA conducted a review of Plaintiff's disability status, see 20 C.F.R. §§ 404.1594(a), 416.994(a), and made an initial determination on June 5, 2018 that Plaintiff was no longer disabled as of June 2018, Tr. at 403-08; see Tr. at 237-54, 255. Plaintiff sought reconsideration. Tr. at 409. The matter was referred to a State Agency Disability Hearing Officer, Tr. at 417-18, who issued a decision on June 10, 2019 upholding the SSA's earlier determination. Tr. at 420-24, 425-33; see Tr. at 434-40.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. at 441. On June 26, 2020, an ALJ held a hearing, during which he heard testimony from Plaintiff, who was represented by counsel, and a

---

[3]    The administrative transcript also contains the transcript of the hearing from March 25, 2016, Tr. at 181-92, upon which the original finding of disability was made, Tr. at 229-36.
[4]    The DIB application is actually dated March 23, 2015, Tr. at 619, but the protective filing date is listed elsewhere in the administrative transcript as March 19, 2015, Tr. at 236.

vocational expert ("VE").[5] See Tr. at 144-73. The ALJ issued a decision on May 25, 2021 finding that Plaintiff's disability ended on June 5, 2018 and Plaintiff had not become disabled again since that date. Tr. at 260-74. Plaintiff requested review by the Appeals Council. Tr. at 518-21; see Tr. at 909-17 (brief in support). On January 25, 2022, the Appeals Council remanded the case to an ALJ for further consideration of the opinion evidence and Plaintiff's residual functional capacity ("RFC"). Tr. at 289-90.

On May 4, 2022, another ALJ held a hearing, during which she heard testimony from Plaintiff, who was represented by counsel; a VE; and Plaintiff's boyfriend/caretaker, Gregory Pierce.[6] See Tr. at 105-43. The ALJ issued a decision on August 31, 2022, finding that Plaintiff's disability ended on June 5, 2018, but that Plaintiff became disabled again on March 1, 2022. Tr. at 298-314.

Plaintiff requested review of the decision by the Appeals Council. Tr. at 565-66. On February 28, 2023, the Appeals Council entered an Order affirming the ALJ's determination that Plaintiff became disabled beginning March 1, 2022, but remanding the matter for further consideration of the time period at issue prior to that date. Tr. at 332-34. The Appeals Council specifically ordered

---

[5]    The hearing was held via telephone, with Plaintiff's consent. Tr. at 146.

[6]    The hearing was held via telephone, with Plaintiff's consent. Tr. at 107.

further consideration of the listed impairments at step three, the opinion evidence and RFC, and issues related to Plaintiff's memory loss. Tr. at 332-34.

On August 18, 2023, another ALJ held a hearing, at which Plaintiff (represented by counsel) and a VE testified.[7] Tr. at 47-66. On October 27, 2023, the ALJ issued a written Decision finding Plaintiff's disability ended on October 14, 2019 but Plaintiff became disabled again on February 7, 2022 and continued to be disabled through the date of the Decision. Tr. at 13-30. Plaintiff requested review of the ALJ's Decision. Tr. at 5-6 (Appeals Council exhibit list and Order), 614-16 (request for review). On January 9, 2024, the Appeals Council denied Plaintiff's request for review, Tr. at 1-4, making the ALJ's Decision the final decision of the Commissioner. On March 8, 2024, Plaintiff commenced this action under 42 U.S.C. § 405(g), by timely filing a Complaint (Doc. No. 1) seeking judicial review of the Commissioner's final decision.

Plaintiff on appeal raises as the issue "[w]hether the ALJ properly weighed all of the medical opinions of record based on an adequate rationale and substantial evidence when formulating the [RFC]." Memorandum in Support of Plaintiff (Doc. No. 19; "Pl.'s Mem."), filed June 21, 2024, at 16. On August 19, 2024, Defendant filed a Memorandum in Support of the

---

[7]        This hearing was held via telephone, with Plaintiff's consent. Tr. at 49-50, 613. Mr. Pierce appeared for moral support but did not testify. Tr. at 51-52.

Commissioner's Decision (Doc. No. 23; "Def.'s Mem.") responding to Plaintiff's argument on the issue. Then, on September 3, 2024, Plaintiff's Reply to Defendant (Doc. No. 24; "Reply") was filed. After a thorough review of the entire record and consideration of the parties' respective arguments, the undersigned finds that the Commissioner's final decision is due to be reversed and remanded for the reasons explained below.

## II. The ALJ's Decision

An ALJ typically follows a five-step sequential inquiry set forth in the Code of Federal Regulations ("Regulations") when determining whether an individual is disabled,[8] determining as appropriate whether the claimant (1) is currently employed or engaging in substantial gainful activity; (2) has a severe impairment; (3) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (4) can perform past relevant work; and (5) retains the ability to perform any work in the national economy. 20 C.F.R. § 404.1520; see also Simon v. Comm'r, Soc. Sec. Admin., 7 F.4th 1094, 1101-02 (11th Cir. 2021) (citations omitted); Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004). The claimant bears the burden of persuasion

---

[8]     "Disability" is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

through step four, and at step five, the burden shifts to the Commissioner. <u>Bowen v. Yuckert</u>, 482 U.S. 137, 146 n.5 (1987).

When the ALJ is determining whether a disability has ended, however, the Regulations mandate following a different sequential inquiry. <u>See</u> 20 C.F.R. §§ 404.1594(f), 416.994(b). This sequential inquiry asks, in substance, whether the claimant (1) is engaging in substantial gainful activity (for DIB cases; for SSI cases this step is eliminated); (2) has an impairment or combination of impairments that meets or medically equals one listed in the Regulations; (3) has experienced medical improvement; (4) has experienced medical improvement that is related to the ability to work; (5) has experienced medical improvement, but an exception to the medical improvement applies; (6) has current impairments that when considered in combination are severe; (7) can perform past relevant work; and (8) can perform other work that exists in the national economy. <u>See</u> 20 C.F.R. §§ 404.1594(f), 416.994(b).

In a cessation of benefits case, "there can be no termination of benefits unless there is substantial evidence of improvement to the point of no disability." <u>McAulay v. Heckler</u>, 749 F.2d 1500, 1500 (11th Cir. 1985) (per curiam) (citation omitted). "Medical improvement" is defined as "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant was]

- 6 -

disabled or continued to be disabled." 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1).
To make the required finding of medical improvement prior to terminating
benefits, an ALJ must "evaluate the medical evidence upon which [the
claimant] was originally found to be disabled," and compare it with the newer
medical evidence. Vaughn v. Heckler, 727 F.2d 1040, 1043 (11th Cir. 1984); see
also Simone v. Comm'r of Soc. Sec. Admin., 465 F. App'x 905, 908 (11th Cir.
2012) (citing McAulay, 749 F.2d at 1500; 20 C.F.R. § 404.1594(c)(1)).[9]

Here, the ALJ found as follows[10]:

1.    The most recent favorable medical decision finding that
[Plaintiff] was disabled is the decision dated March 31, 2016. This
is known as the "comparison point decision" or CPD.

2.    At the time of the CPD, [Plaintiff] had the following medically
determinable impairments: irritable bowel syndrome (IBS),
generalized anxiety disorder, and major depressive disorder. These
impairments were found to result in the [RFC] to lift and/or carry
20 pounds occasionally and 10 pounds frequently; stand and/or
walk for a total of six hours in an eight hour workday; sit for a total
of six hours in an eight hour workday; push and/or pull unlimited,
other than as shown for lift and/or carry; can perform simple,
routine, repetitive tasks; but has frequent difficulty interacting
appropriately with co-workers, the public, and supervisors; and

---

[9]      "When considering a case for termination or cessation of benefits, . . . the burden
is on the Commissioner to prove that the claimant is no longer disabled as of the cessation
date because the [p]laintiff had experienced 'medical improvement.'" Townsend v. Comm'r of
Soc. Sec., No. 6:13-cv-1783-Orl-DAB, 2015 WL 777630, at *3 (M.D. Fla. Feb. 24, 2015)
(unpublished) (emphasis omitted) (citing Simpson v. Schweiker, 691 F.2d 966, 969 (11th Cir.
1982), superseded by statute on other grounds as stated in Elam v. R.R. Ret. Bd., 921 F.2d
1210, 1214 (11th Cir. 1991); Huie v. Bowen, 788 F.2d 698, 705 (11th Cir. 1986).
[10]     The ALJ's findings related to Plaintiff's disability reoccurring beginning
February 7, 2022 are not at issue here and are not summarized in detail.

frequent difficulty responding appropriately to changes and pressures in a routine work setting.

3.    Through the date of this [D]ecision, [Plaintiff] has not engaged in substantial gainful activity.

4.    On June 5, 2018, it was determined that [Plaintiff] was no longer disabled as of June 5, 2018. However, the objective medical evidence indicates that [Plaintiff] continued to be disabled until October 14, 2019, because, until October 14, 2019, the severity of her impairments met listing 5.08 [located in] 20 CFR Part 404, Subpart P, Appendix 1.

5.    The medical evidence establishes that, since October 14, 2019, [Plaintiff] has had the following medically determinable impairments: irritable bowel syndrome (IBS), generalized anxiety disorder, major depressive disorder, thoracic degenerative changes, cervical strain, alcoholism, liver disease, chronically underweight, status post cholecystectomy, GERD, sinusitis, rhinitis, and costochondritis. These were [Plaintiff's] impairments from prior to February 7, 2022, the date that [Plaintiff] became disabled again.

Tr. at 15-16 (emphasis and citations omitted).

The ALJ then engaged in the rest of the steps in the sequential inquiry. At step two, the ALJ determined that "[s]ince October 14 2019, [Plaintiff] has not had an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." Tr. at 16 (emphasis and citation omitted).   At step three, the ALJ found that "[m]edical improvement occurred on October 14, 2019." Tr. at 18 (emphasis and citation omitted).

- 8 -

The ALJ then assessed Plaintiff's RFC:

> Since October 14, 2019, the impairments present at the time of the CPD decreased in medical severity to the point where, prior to February 7, 2022, [Plaintiff] had the [RFC] to perform light work as defined in 20 CFR [§] 404.1567(b) except the individual can occasionally climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can occasionally crouch, stoop, kneel, and crawl; can perform simple routine tasks with no assembly line or tandem tasks; can make simple work related decisions; can tolerate occasional changes in the workplace; can have frequent interaction with coworkers and supervisors; can have occasional interaction with the general public; and needs access to a restroom.

Tr. at 19 (emphasis omitted).

At step four, the ALJ found that Plaintiff's "medical improvement is related to the ability to work because it resulted in an increase in [Plaintiff's RFC]." Tr. at 19 (emphasis and citation omitted). At step five, although not explicitly stated, it can be inferred from the Decision that the ALJ found no exceptions apply to the medical improvement. At step six, the ALJ found that "[s]ince October 14, 2019, [Plaintiff] has continued to have a severe impairment or combination of impairments." Tr. at 19 (emphasis and citation omitted).

At step seven, the ALJ found that "[s]ince October 14, 2019, [Plaintiff] has been unable to perform past relevant work" as a "speech pathologist" and a "guidance counselor." Tr. at 28 (some emphasis and citation omitted). The ALJ then proceeded to step eight and, after considering Plaintiff's age ("a younger

- 9 -

individual"), education ("at least a high school education"), work experience, and RFC, the ALJ relied on the testimony of the VE and found that "[f]rom October 14, 2019 through February 7, 2022 . . . there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed," such as "Cafeteria Attendant," "Garment Sorter," and "Cleaner, Housekeeping." Tr. at 28-29 (some emphasis and citation omitted). The ALJ concluded that Plaintiff's disability ended on October 14, 2019 but that Plaintiff became disabled again on February 7, 2022 and the disability continued through the date of the Decision. Tr. at 30 (emphasis and citation omitted).

### III. Standard of Review

This Court reviews the Commissioner's final decision as to cessation of disability pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). Although no deference is given to the ALJ's conclusions of law, findings of fact "are conclusive if . . . supported by 'substantial evidence.'" Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing Falge v. Apfel, 150 F.3d 1320, 1322 (11th Cir. 1998)). "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)). The substantial evidence standard is met when there is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Falge, 150 F.3d at 1322

(quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)); <u>see also</u> <u>Biestek v. Berryhill</u>, 587 U.S. 97, 103 (2019); <u>Samuels v. Acting Comm'r of Soc. Sec.</u>, 959 F.3d 1042, 1045 (11th Cir. 2020) (citation omitted).   The key is "whether the [Commissioner's] finding of improvement to the point of no disability is supported by substantial evidence." <u>Simpson</u>, 691 F.2d at 969.   It is not for this Court to reweigh the evidence; rather, the entire record is reviewed to determine whether "the decision reached is reasonable and supported by substantial evidence." <u>Cornelius v. Sullivan</u>, 936 F.2d 1143, 1145 (11th Cir. 1991) (citation omitted); <u>see also</u> <u>McRoberts v. Bowen</u>, 841 F.2d 1077, 1080 (11th Cir. 1988); <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987). The decision reached by the Commissioner must be affirmed if it is supported by substantial evidence—even if the evidence preponderates against the Commissioner's findings. <u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1158-59 (11th Cir. 2004) (per curiam).

## IV. Discussion

Plaintiff argues the ALJ erred in evaluating the opinions of two treating physicians and a treating psychologist: Frank Ditz, M.D.; Luis Vinuela, M.D.; and Louise Peters, Psy.D. Pl.'s Mem. at 16-30; Reply at 1-7. As explained below, the undersigned finds the ALJ erred in evaluating the opinion of Dr. Ditz regarding the effects of Plaintiff's IBS. The matter must be reversed and

- 11 -

remanded for reconsideration of Dr. Ditz's opinion, which also explained the relation between the IBS and Plaintiff's mental impairments. If appropriate, the remaining opinions at issue, which address mainly mental limitations, should also be reconsidered on remand.

As to Dr. Ditz, Plaintiff contends the ALJ erred in assigning "some weight" to his opinion regarding the IBS and electing not to incorporate Dr. Ditz's assigned limitations in the RFC. Id. at 26-27. Responding, Defendant contends the ALJ provided good reasons, supported by substantial evidence, for not incorporating the assigned limitations. Def.'s Mem. at 9-10.

"Medical opinions[11] are statements from [physicians or other] acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [the claimant's] symptoms, diagnosis and prognosis, what [the claimant] can still do despite impairment(s), and [the claimant's] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1). Acceptable medical sources include licensed physicians, licensed psychologists,

_____

[11]    On January 18, 2017, the SSA revised the Rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017. See Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5,844, 5,844 (January 18, 2017); see also 82 Fed. Reg. 15,132 (Mar. 27, 2017) (amending and correcting the final Rules published at 82 Fed. Reg. 5,844). Because Plaintiff protectively filed her claim before that date, the undersigned cites the Rules and Regulations that are applicable to the date the claim was filed, as well as Eleventh Circuit authority interpreting those Rules and Regulations. The parties agree this is the appropriate law to apply. See Pl.'s Mem. at 18-20; Def.'s Mem. at 6-7.

licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 404.1502(a).[12]

The Regulations establish a hierarchy among medical opinions that provides a framework for determining the weight afforded each medical opinion. See 20 C.F.R. § 404.1527. Essentially, "the opinions of a treating physician are entitled to more weight than those of a consulting or evaluating health professional," and "[m]ore weight is given to the medical opinion of a source who examined the claimant than one who has not." Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1259, 1260 n.5 (11th Cir. 2019). Further, "[n]on-examining physicians' opinions are entitled to little weight when they contradict opinions of examining physicians and do not alone constitute substantial evidence." Id. at 1260 (citing Sharfarz v. Bowen, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)).

The following factors are relevant in determining the weight to be given to a physician's opinion: (1) the "[l]ength of the treatment relationship and the frequency of examination"; (2) the "[n]ature and extent of [any] treatment relationship"; (3) "[s]upportability"; (4) "[c]onsistency" with other medical

---

[12]    For claims filed on or after March 27, 2017, acceptable medical sources also include licensed audiologists, licensed Advanced Practice Registered Nurses, and licensed Physician Assistants. 20 C.F.R. § 404.1502(a)(6)-(8).

evidence in the record; and (5) "[s]pecialization." 20 C.F.R. § 404.1527(c)(2)-(5); see also 20 C.F.R. § 404.1527(f); Walker v. Soc. Sec. Admin., Comm'r, 987 F.3d 1333, 1338 (11th Cir. 2021) (citation omitted); McNamee v. Soc. Sec. Admin., 164 F. App'x 919, 923 (11th Cir. 2006) (citation omitted) (stating that "[g]enerally, the opinions of examining physicians are given more weight than those of non-examining physicians[;] treating physicians[' opinions] are given more weight than [non-treating physicians;] and the opinions of specialists are given more weight on issues within the area of expertise than those of non-specialists").

An ALJ is required to consider every medical opinion. See 20 C.F.R. § 404.1527(c) (stating that "[r]egardless of its source, we will evaluate every medical opinion we receive"). While "the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion," Oldham v. Schweiker, 660 F.2d 1078, 1084 (5th Cir. 1981) (citation omitted); see also 20 C.F.R. § 404.1527(c)(2), "the ALJ must state with particularity the weight given to different medical opinions and the reasons therefor," Winschel v. Comm'r of Soc. Sec., 631 F.3d 1176, 1179 (11th Cir. 2011) (citing Sharfarz, 825 F.2d at 279); Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005); Lewis, 125 F.3d at 1440.

- 14 -

The RFC assessment "is the most [a claimant] can still do despite [his or her] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). It is used at step four to determine whether a claimant can return to his or her past relevant work, and if necessary, it is also used at step five to determine whether the claimant can perform any other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5), 416.945(a)(1). In assessing a claimant's RFC, the ALJ "must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8P, 1996 WL 374184 at *5; see also Pupo v. Comm'r, Soc. Sec. Admin., 17 F.4th 1054, 1064 (11th Cir. 2021) (citing Schink v. Comm'r of Soc. Sec., 935 F.3d 1245, 1268 (11th Cir. 2019)); Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990) (stating that "the ALJ must consider a claimant's impairments in combination") (citing 20 C.F.R. § 404.1545; Reeves v. Heckler, 734 F.2d 519, 525 (11th Cir. 1984)).

Here, Dr. Ditz on June 5, 2020 completed an IBS Medical Source Statement applicable to the time period from November 1, 2019 through the date of the statement. Tr. at 1971-73. Dr. Ditz on July 6, 2022 updated his opinion on a second IBS Medical Source Statement, applicable to the time frame beginning the day after the first statement was completed, through July 6, 2022. Tr. at 2209-11. Importantly, Dr. Ditz started treating Plaintiff on October

- 15 -

5, 2019, Tr. at 1971, just days prior to October 14, 2019, the day the ALJ found Plaintiff's disability had ended, Tr. at 30. Thus, the Court is confident that Dr. Ditz did not conflate symptoms Plaintiff was having prior to October 5, 2019. Further, Dr. Ditz's opinions on the two forms almost perfectly match up with the timeframe at issue (October 14, 2019 through February 7, 2022).

According to Dr. Ditz on the first form, Plaintiff suffers chronic diarrhea, abdominal pain and cramping, weight loss, loss of appetite, vomiting, abdominal distention, nausea, malaise, and fatigue. Tr. at 1971. Dr. Ditz stated Plaintiff "has diarrhea occurring at least twice daily with need to evacuate in a hurry and often needs to repeat." Tr. at 1971. Dr. Ditz listed objective evidence in support of the diagnosis and symptoms. Tr. at 1971. According to Dr. Ditz, the medication "Bentyl did not help" and Plaintiff was also on Cholestryamine. Tr. at 1972. Plaintiff has depression and anxiety that affect the IBS. Tr. at 1972.

Dr. Ditz opined Plaintiff needs ready access to a restroom and will need two to four unscheduled breaks per day with five minutes notice and lasting ten to fifteen minutes. Tr. at 1972. Plaintiff will also sometimes need to lie down or rest one to two times per day for five to ten minutes. Tr. at 1972. Plaintiff will be "off task" more than 25% of the day due to IBS and is incapable of even "low stress" work. Tr. at 1973. Plaintiff will miss about three days per month due to IBS. Tr. at 1973. According to Dr. Ditz, Plaintiff's "major depression and anxiety

are the biggest issue[s]" and "most likely cause the IBS-D and the functional pain [illegible]." Tr. at 1973.

Dr. Ditz on the second form opined Plaintiff's prognosis was "poor" and, most relevant here, stated she was in need of daily unscheduled breaks lasting twenty to thirty minutes with only one to two minutes of advance notice. Tr. at 2210. Plaintiff would have the need to lie down or rest two to three times per week for ten minutes at a time. Tr. at 2210. Plaintiff would be off task 15% of the time and was incapable of even "low stress" work. Tr. at 2210-11. Plaintiff would be absent more than four days per month. Tr. at 2211. At the time of this second opinion, Plaintiff was "wheelchair bound." Tr. at 2211. According to Dr. Ditz, Plaintiff "can't drive [and] can't handle her own finances or activities of daily living without assistance." Tr. at 2211.

The ALJ, in evaluating Dr. Ditz's opinion, found as follows:

> Dr. Ditz's opinion that [Plaintiff] requires a job that provides access to a restroom is given some weight because it is supported by the objective medical evidence. [Plaintiff] has been treated for IBS; and she experiences related symptoms. The remainder of Dr. Ditz's opinion is given little weight because the objective medical evidence does not support the level of restriction proposed by his opinion. In June 2020, Dr. Ditz noted that labs from a December 2019 physical did not reveal any significant findings; and an upper GI with small bowel follow through was negative. At the time, he continued [Plaintiff] on medication for her GI symptoms as well as her medication for her mental symptoms and her neck pain. In February 2020,

- 17 -

[Plaintiff's] caregiving duties for her parents were averaging about six hours per day. She continued to be her parents' caregiver in March 2020. A telemedicine session from late April 2020 indicated that [Plaintiff] was doing well with her current medications for depression. She reported having more depression in May 2020; but she stated that it was likely due to her living situation. She also denied experiencing panic attacks. [Plaintiff] was continued on her medication for IBS in March 2021. In April 2021, she was continued to her medication for depression and anxiety. From October 14, 2019 through February 7, 2022, [Plaintiff's] physical and mental symptoms were effectively managed by her treating medical providers with adjustments to medication and counseling. Findings from the most recent consultative exam were not suggestive of a disabling impairment. During the relevant period, she did not require inpatient psychiatric treatment. Her reported activities from October 14, 2019 through February 7, 2022, suggested a greater of level than alleged. She was able to drive, she was independent with personal care, and she cared for her parents. From October 14, 2019 through February 7, 2022, [Plaintiff's] limitations would not have precluded the performance of all competitive work.

Tr. at 25-26 (citations omitted).

Presumably because Dr. Ditz treated Plaintiff for more than just the IBS, the ALJ's findings incorporate most of Plaintiff's impairments. However, Dr. Ditz in the IBS Medical Source Statements was asked to opine specifically regarding the effects of Plaintiff's IBS. Although he opined that the mental impairments are indeed related, almost all of the specific limitations he imposed were as a result of symptoms of Plaintiff's IBS. Tr. at 1971-73, 2209-11. A lot of

the ALJ's findings regarding his opinion, by contrast, relate solely to the mental issues. See Tr. at 25-26. As for the IBS aspect, the ALJ summarized most of the June 2020 opinion, but then found simply that "Dr. Ditz's opinion that [Plaintiff] requires a job that provides access to a restroom is given some weight because it is supported by the objective medical evidence." Tr. at 25. The ALJ also pointed to some lab work containing insignificant findings, Tr. at 25, evidently suggesting that Plaintiff's IBS is not as severe as alleged. In assigning the RFC, the ALJ repeated only that Plaintiff "needs access to a restroom." Tr. at 20.

To state the obvious, everyone needs access to a restroom during an eight-hour workday. The real question is to what extent—a question that Dr. Ditz answered in detail through his two opinions. The ALJ seemed to accept Plaintiff has atypical restroom needs, but then elected not to include any of them in the RFC. Given that Dr. Ditz's opinion directly relates to the timeframe at issue, and in light of the evidence during the timeframe that supports his opinion, the ALJ's partial discounting of Dr. Ditz's opinion and the ultimate RFC are not supported by substantial evidence. See, e.g., Tr. at 1979 (April 15, 2020 note by Dr. Ditz documenting Plaintiff's report of "miserable" IBS symptoms and adding a medication to try), 1989 (June 5, 2020 note by Dr. Ditz indicating he would be helping with "IBS-D" paperwork because Plaintiff's gastroenterologist

refused, and documenting the multiple failed treatment options and other studies that had been tried since November 4, 2019), 2152 (June 15, 2020 note by Dr. Ditz indicating "[t]he irritable bowel syndrome is still not well controlled" and the gastroenterologist Dr. Krishna "still did not want to do the paperwork" but changed another medication), 2142 (October 29, 2020 note by Dr. Ditz indicating Plaintiff was "still having chronic diarrhea symptoms"), 2145 (September 28, 2020 note by Dr. Ditz indicating "[t]he IBS has not been well controlled"); see Tr. at 2153-60 (Dr. Krishna's notes documenting IBS symptoms, including diarrhea, nausea and vomiting during the relevant time period).

The matter must be reversed and remanded for further consideration of Dr. Ditz's opinion, and if necessary, the opinions of Dr. Peters and Dr. Vinuela.

### V. Conclusion

In light of the foregoing, it is

**ORDERED**:

1.     The Clerk of Court is directed to enter judgment pursuant to sentence four of 42 U.S.C. § 405(g), **REVERSING** the Commissioner's final decision and **REMANDING** this matter with the following instructions:

(A)    Reconsider Dr. Ditz's opinion in accordance with applicable regulations;

- 20 -

(B)    If necessary, reconsider the opinions of Dr. Peters and Dr. Vinuela; and

(C)    Take such other action as may be necessary to resolve this claim properly.

2.    The Clerk is further directed to close the file.

**DONE AND ORDERED** in Jacksonville, Florida on March 18, 2025.

*James R. Klindt*

JAMES R. KLINDT
United States Magistrate Judge

kaw
Copies to:
Counsel of Record

- 21 -